IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILL JOE WHEELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-12-793-F |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security Administration[1], ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. Background

Plaintiff protectively filed for benefits on September 30, 2009. (TR 103, 118). At that

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

1

time, Plaintiff was 40 years old, and he alleged that he became unable to engage in substantial gainful activity on January 5, 2009. Plaintiff had a seventh grade education and a steady earnings record until 2010. Plaintiff injured his back in a motor vehicle accident in 2006. MRI testing following this accident showed disc herniation at two levels of Plaintiff's lumbar spine. (TR 214). After conservative medical treatment measures failed, Plaintiff underwent lumbar fusion surgery in January 2009. (TR 183-185). He was later released to return to work in May 2009 with restrictions of no lifting over 40 pounds and limited twisting and bending. (TR 194). In August 2009, Plaintiff reported to his treating surgeon that his right leg pain was "resolved." (TR 265). The surgeon noted that Plaintiff exhibited good leg strength, that x-rays showed "good position" of his lumbar spine, and that Plaintiff was referred for physical therapy and pain management by Dr. Ice. (TR 265).

MRI testing of Plaintiff's right knee in October 2009 showed small joint effusion. (TR 187). MRI testing of Plaintiff's left shoulder in March 2010 showed a rotator cuff tear. (TR 282). Plaintiff underwent a second back operation in March 2010 to remove hardware. (TR 298).

In a hearing conducted in April 2011, Plaintiff testified he was 41 years old and had previously worked as a maintenance worker until January 2009 when he was terminated from his job due to the permanent 40-pound weight restriction imposed by his treating doctor. (TR 23-24). Plaintiff testified that he was unable to read or write. (TR 27).

A vocational expert ("VE") also testified. The VE classified Plaintiff's previous job as a janitor or maintenance engineer as "medium" work. (TR 41). In response to hypothetical

2

questioning by Administrative Law Judge Marcy ("ALJ"), the VE testified that an individual who could perform work at the light exertional level and who was illiterate and could only occasionally climb, balance, stoop, kneel, crouch, or crawl could not perform Plaintiff's previous job. (TR 41). However, this individual could perform the "light" exertional jobs of "hand packager," "bench assembler," and "machine tender." (TR 42-43). The VE provided information concerning the availability of these three jobs in the national and state economy but did not indicate where this information was found.

In a decision entered June 23, 2011, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 5, 2009, the date on which Plaintiff alleged his disability began. (TR 11). Following the agency's well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to "status post" lumbar fusion, small right knee joint effusion, and hypertension. (TR 11). At step three, the ALJ found that these impairments, when considered singly or in combination, did not satisfy or medically equal one of the listed impairments deemed disabling *per se* by the agency. At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work[2] that did not involve more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling and that did not require reading because he was "not able to read." (TR 11-12).

Having found that Plaintiff was unable to perform his past relevant work as a janitor

---

[2]Light work is defined as work involving lifting objects weighing up to 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, and mostly walking or standing, or sitting with pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

3

based on the VE's testimony, the ALJ addressed the final step-five issue of whether Plaintiff could perform other work available in the economy. At this step, the ALJ concluded, based on the testimony of the VE, that Plaintiff was not disabled within the meaning of the Social Security Act because he was able to perform jobs available in the economy, including the jobs of "hand packager, which accounts for approximately 65,000 jobs nationally and 6,000 jobs in the State of Oklahoma; bench assembler, which accounts for approximately 100,000 jobs nationally and 2,000 jobs in the State of Oklahoma; and machine tender, which accounts for approximately 30,000 jobs nationally and 1,300 jobs in the State of Oklahoma." (TR 14-15). The ALJ added that the VE's testimony was consistent with the job information contained in the United States Department of Labor's Dictionary of Occupational Titles ("DOT"). (TR 15). However, there is no evidence to support this statement.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a

preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Step Five - Availability of Jobs

Plaintiff challenges only the Commissioner's step five determination that he is capable of performing other jobs available in the economy. Plaintiff contends that the ALJ erred by failing to comply with Social Security Ruling ("SSR") 00-4p and Haddock v. Apfel, 196 F.3d 1084 (10th Cir. 1999). SSR 00-4p requires that the ALJ inquire about and resolve any conflicts between a VE's testimony regarding a job and the description of that job in the DOT. In Haddock, the Tenth Circuit concluded that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." Haddock, 196 F.3d at 1087.

Plaintiff contends that the "hand packager" job identified by the VE and relied on by the ALJ to support the step five determination is described in the DOT as a "medium" exertional level job. Plaintiff also contends that the DOT describes several "bench assembler" positions, although some of the "bench assembler" jobs are performed at the "medium" exertional level, a level beyond Plaintiff's RFC for work, and even the "bench

5

assembler" jobs described in the DOT as "light" in exertional level require a reading level of "2," which is beyond Plaintiff's RFC for work due to his inability to read. Finally, Plaintiff contends that the DOT does not even describe a "machine tender" job, although the DOT does describe several "machine operator" jobs ranging from "light" to "heavy" in exertional requirements. But, Plaintiff points out, these jobs are classified as semi-skilled to skilled jobs, and the ALJ made no findings and asked no questions of the VE concerning transferability of skills. Thus, because of these discrepancies between the VE's testimony and the DOT, Plaintiff argues that there is not substantial evidence to support the Commissioner's decision.

In response, Defendant Commissioner asserts several arguments. First, the Commissioner argues that the DOT describes "generic" jobs at their approximate maximum requirements and thus not all jobs in each "category" would have those maximum requirements. Defendant's Response Brief, at 5. Defendant is apparently asserting with this argument that, despite the mandatory language of SSR 00-4p and Haddock, supra, the ALJ could simply rely on categories of jobs without identifying any particular job that the claimant could perform.

Secondly, Defendant speculates that the VE was actually testifying that some "hand packager" jobs and some "bench assembler" jobs could be performed at the "light" exertional level. Further, Defendant points to one job, that of an "assembler, small products I," which is described in the DOT as having a reading level of "1" and speculates that the VE was actually identifying this job in response to the ALJ's hypothetical, even though the VE did

not testify to either of these speculative assertions.

Defendant further contends that the VE's testimony provides substantial evidence to support the step five determination because (1) the DOT does not classify jobs for illiterate individuals and (2) therefore the ALJ could rely on the expert vocational testimony to establish the availability of jobs for an illiterate individual such as the Plaintiff. Finally, Defendant suggests that the DOT describes Plaintiff's previous work as a janitor as requiring a "language level of '3,'" which indicates he is not really illiterate, despite the Plaintiff's testimony and the ALJ's RFC finding to that effect.

In any event, Defendant argues that the ALJ did not err in failing to explain any discrepancy between the DOT and the VE's testimony because the DOT describes several "machine tender" jobs at the "light" exertional level with a language level of "1," including the jobs of "threading machine tender," "buffing machine tender," "poultry picking machine tender," "almond cutting machine tender," "duplicating machine operator," and "duplicating machine operator II," even though the VE did not identify any specific job other than a generalized "machine tender" job as falling within the Plaintiff's RFC for work.

In a 2009 published decision, the Tenth Circuit Court of Appeals recognized that an error under SSR 00-4p may be harmless where there were no conflicts between a VE's testimony and the DOT at step five. Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009). In that case, the VE stated than a hypothetical individual could perform two jobs, and the VE provided DOT job coding information for these positions. Using this job information, the appellate court compared the VE's testimony with the jobs as they are described in the DOT

and concluded that there was no conflict between the VE's testimony and the DOT. In the absence of any conflict, the court concluded that the failure to inquire about potential discrepancies was harmless error. Id. at 1174.

Here, there is no DOT job information from which to compare the positions identified by the VE with the Plaintiff's RFC for work as found by the ALJ. Under these circumstances, the Court can only guess as to which jobs the VE was describing. With respect to the Commissioner's argument that the ALJ could satisfy the step five burden by relying on categories of jobs without specifying particular jobs in the DOT, so long as at least one job in that category could have matched the claimant's RFC for work, this argument has previously been rejected by this Court. See Parker v. Astrue, 2010 WL 1490056 (W.D.Okla. Mar. 22, 2010)(unpublished Report and Recommendation), adopted, 2010 WL 14900062 (W.D. Okla. Apr. 13, 2010). In that case former United States Magistrate Judge Roberts found that "the ALJ erred at step five of the sequential process by relying on categories of jobs that Plaintiff could perform rather than specifying particular jobs in the DOT. Any number of particular jobs can fit within a job category, and a reviewing court can only speculate as to the specific jobs the VE had in mind." Id. at *4. See also Crick v. Astrue, 2012 WL 2403401 (W.D. Okla. June 5, 2012)(unpublished Report and Recommendation, Bacharach, former U.S.Magistrate Judge)(holding ALJ erred by not conducting the required inquiry about possible conflicts between VE testimony and DOT and by failing to specify DOT job coding information necessary to allow the Court to determine whether ALJ's error was harmless), adopted, 2012 WL 2403399 (W.D. Okla. June 26, 2012).

SSR 00-4p clearly requires that "[a]t the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, *on the record*, as to whether or not there is . . . consistency" between the occupational evidence provided by a VE and the occupational information supplied by the DOT. SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). When the VE identifies a conflict, the adjudicator "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." Id.

The Commissioner's other arguments provide only improper *post hoc* rationalization for the ALJ's inadequate inquiry and unsupported step five findings. Under these circumstances, the Commissioner's error at step five is not harmless, and the Commissioner's failure to follow the correct legal standards in denying Plaintiff's application should be reversed and remanded for further administrative proceedings to correct the error.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's application for benefits and REMANDING for further administrative proceedings. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before       June 11th , 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir.

1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____22nd_____ day of _____May_____, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE